UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------
SUSAN C. McKEEFRY,

                          Plaintiff,

       - against -

TOWN OF BEDFORD, *et al.*,

                          Defendants.

 ---------------------------------------------------------------

**OPINION & ORDER**

18-CV-10386 (CS)

<u>Appearances:</u>

Thomas M. Gambino
Law Office of Gambino & Demers, LLC
Poughkeepsie, New York
*Counsel for Plaintiff*

Timothy S. Carr
Eustace, Prezioso & Yapchanyk
New York, New York
*Counsel for Defendant Davis*

Christopher Cerullo
Christopher G. Fusco
Callahan & Fusco, LLC
New York, New York
*Counsel for Town Defendants*

<u>Seibel, J.</u>

       Before the Court are the motions to dismiss of Defendant Andrea Davis, (Doc. 20), and

Defendants Town of Bedford (the "Town"), Town of Bedford Police Department (the "Police

Department"), Detective Joseph Comunale, Sergeant Vincent Gruppuso, and Lisbeth "Boo"

Fumagalli, (collectively the "Town Defendants"), (Doc. 42). For the following reasons, both

motions to dismiss are GRANTED.

## I.    BACKGROUND

The Court accepts as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended Complaint. (Doc. 37 ("SAC").)[1]

### A.    Facts

On April 18, 2015, Plaintiff placed a 911 call to report underage drinking at Davis's residence. (*Id.* ¶ 15.) At the time of the call, Defendant Police Officers[2] asked Plaintiff how she knew that underage drinking was occurring at the Davis residence and she responded that she did not know whether it was occurring but that she believed that it was. (*Id.* ¶ 25.)[3] Plaintiff alleges that the Police Officers arrived at the Davis residence and observed underage occupants inside who closed the window and shut the blinds. (*Id.* ¶ 27.) Police approached the house and Davis answered the door but refused entry to the Police Officers. (*See id.* ¶ 28.)

On May 20, 2015, Plaintiff was arrested by Detective Comunale and charged with making a false report in violation of New York Penal Law 240.50 based on her 911 call. (*Id.*

---

[1] Plaintiff first attempted to file her First Amended Complaint on April 19, 2019, (Doc. 16), but, due to filing errors, she did not successfully file it until May 7, 2019, (Doc. 25). Between those two dates, Davis filed her motion to dismiss, moving against Plaintiff's First Amended Complaint that had been improperly filed. (Doc. 20.) Plaintiff filed the SAC on July 28, 2019, after which the Town Defendants moved to dismiss it, (Doc. 42). Davis never sought to renew or update her motion to dismiss after Plaintiff properly filed her First Amended Complaint or filed the SAC. Because the allegations in each version of Plaintiff's complaints are substantively similar, I assume for purposes of this motion that Davis intends to move to dismiss the Second Amended Complaint and I thus consider the facts therein.

[2] The "Police Officers" are Detective Comunale, Sergeant Gruppuso, and Police Officers John Does 3-10. (SAC ¶ 6.)

[3] Plaintiff alleges that she told the Police Officers she would be "fine" if it turned out there was no underage drinking occurring at the Davis residence if it meant another young life would not be in jeopardy like her daughter's had been. (SAC ¶ 26.) Plaintiff's daughter was a former roommate of Davis's daughter at a boarding school. (*Id.* ¶ 22.) During a weekend trip, Plaintiff's underage daughter became "extremely intoxicated" at the encouragement of Davis's underage daughter and was hospitalized. (*Id.*)

¶¶ 16, 74.)  It was alleged that Plaintiff impersonated someone else to file a false report of underage drinking and child endangerment.  (*Id.* Ex. 5 at 1.)  On July 6, 2017, all criminal charges were dismissed.  (*Id.* ¶ 33; *see id.* Ex. 1.)  Pat Bonanno, Plaintiff's attorney in her criminal case, requested the production of all documents relevant to Plaintiff's case, (*id.* ¶¶ 34, 39; *see id.* Ex. 4 at 2), but on July 10, 2017, Sergeant Gruppuso submitted a sworn statement to Bonanno affirming that on that date, he had destroyed all records pertaining to Plaintiff's arrest that were in the Police Department's possession, (*id.* ¶ 36; *see id.* Ex. 2).  On March 1, 2018, Fumagalli, the Town of Bedford Town Clerk, informed Bonanno that the Police Department had no case concerning Plaintiff.  (*Id.* ¶ 37; *see id.* Ex. 3.)  The next day, Bonanno wrote a letter to Fumagalli appealing the withholding of the documents.  (*See id.* Ex. 4.)  On April 24, 2018, the Town's attorneys provided documents to Bonanno pertaining to Plaintiff's arrest.  (*Id.* ¶ 39; *see id.* Ex. 6 at 1-5.)  The records produced contain emails between Defendants that Plaintiff alleges indicate a conspiracy to orchestrate the prosecution of Plaintiff.  (*Id.* ¶ 40.)

Plaintiff alleges that the termination of her criminal case indicates her innocence of the criminal charges against her.  (*Id.* ¶ 46.)  Plaintiff further alleges that Davis made false statements about Plaintiff to the police and utilized her position as a "Board of Appeals Zoning Officer" to inhibit the proper investigation of underage drinking occurring at the Davis residence and orchestrate Plaintiff's arrest and prosecution.  (*Id.* ¶¶ 11, 17, 19-20, 29.)

### B.  Procedural History

Plaintiff filed this action on November 8, 2018.  (Doc. 1.)  Pre-motion conferences were held on March 7, 2019, (Minute Entry dated Mar. 11, 2019), and June 19, 2019, (Minute Entry dated June 19, 2019), to discuss Davis's and the Town Defendants' respective proposed motions to dismiss.  The Court granted Plaintiff leave to file an amended complaint after each conference,

and she filed the SAC on July 28, 2019.  (SAC.)  Davis filed her motion and memorandum on

May 2, 2019, (Doc. 22 ("Davis Mem.")), and Plaintiff filed her opposition papers on May 15,

which included her opposition memorandum, (Doc. 28 ("P's Davis Opp.")), declaration of

counsel, (Doc. 30 ("Davis Gambino Decl.")), and accompanying exhibits.  Davis filed a reply

memorandum on May 20.  (Doc. 31.)  On October 11, 2019, the Town Defendants filed their

memorandum, (Doc. 42 at 3-17 ("Town Ds' Mem.")),[4] Plaintiff filed her opposition

memorandum, (Doc. 43 ("P's Town Opp.")), another declaration of counsel, (Doc. 43 Ex. 1

("Town Gambino Decl.")), and accompanying exhibits, (*id.* Exs. 2-8), and the Town Defendants

filed their reply, (Doc. 44 ("Town Ds' Reply")).

Plaintiff's Second Amended Complaint raises the following claims against all

Defendants:  (1) conspiracy under 42 U.S.C. § 1983, (SAC ¶¶ 78-81); (2) false arrest, false

imprisonment, and malicious prosecution under § 1983, (*id.* ¶¶ 82-84); (3) First and Fourteenth

Amendment violations under § 1983, (*id.* ¶¶ 88-93); and (4) libel and slander, (*id.* ¶¶ 106-111).

Plaintiff also raises the following claims against the Town Defendants only:  (1) supervisory

liability and failure to intercede under § 1983, (*id.* ¶¶ 85-87); and (2) negligent hiring and

supervision under state law, (*id.* ¶¶ 94-105).[5]

---

[4] Doc. 42 consists of the Town Defendants' notice of motion to dismiss, (Doc. 42 at 1-2), the
Town Defendants' memorandum, (*id.* at 3-17), and Fumagalli's declaration, (*id.* at 25-27
("Fumagalli Decl.")).

[5] Davis briefed arguments seeking dismissal of Plaintiff's claims for "negligent hiring and
supervision."  (Davis Mem. at 9.)  Plaintiff acknowledges that "[n]o claim is made that
Defendant Davis negligently hired or supervised any Defendant."  (P's Davis Opp. at 14.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).[6]

## B.    Documents Properly Considered

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Incorporated Village of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted).  "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents."  *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted).  "A document is integral to the complaint where the complaint relies heavily upon its terms and effect.  Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (alteration in original) (citation and internal quotation marks omitted).  When a court takes judicial notice of a document on a motion to dismiss, it should generally do so only "to determine what statements [the documents] contain [ ] . . . not for the truth of the matters

---

[6] Plaintiff cites *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for the proposition that a motion to dismiss should not be granted unless it is apparent that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief."  (P's Davis Opp. at 8; P's Town Opp. at 7.)  *Conley*'s "no set of facts" standard, however, was "retire[d]" by the Supreme Court in *Twombly*, 550 U.S. at 562-63, and the applicable standard is now one of plausibility, *see Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  I even instructed Plaintiff's counsel at the pre-motion conference on March 7, 2019, that *Conley* is no longer good law.  No attorney should be citing *Conley* in 2019, and it is beyond comprehension why Plaintiff's counsel did so on this motion.

asserted." *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (alterations in original) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Here, Plaintiff attached to her SAC the following documents: (1) the certificate of disposition in the underlying criminal case against Plaintiff in the Bedford Town Court, (SAC Ex. 1); (2) the sworn statement of Sergeant Gruppuso, who averred that on July 10, 2017, he destroyed all copies of records in the Town of Bedford's Police Department pertaining to Plaintiff's arrest, (*id.* Ex. 2); (3) an email dated March 1, 2018, from Fumagalli to Bonanno stating that neither she nor the Police Department had a record of Bonanno's Freedom of Information Law ("FOIL") request and that the Police Department had no case involving Plaintiff, (*id.* Ex. C); (4) a letter dated March 2, 2018, from Bonanno responding to Fumagalli's email about his FOIL request and appealing her determination, (*id.* Ex. D); (5) documents produced by the Town's attorney on April 24, 2018, related to Plaintiff's underlying criminal case, (*id.* Ex. E; *see id.* ¶ 39); and (6) additional such documents including emails, (*id.* Ex. F). In opposition to both motions, Plaintiff attached the same exhibits, (Davis Gambino Decl. Exs. B-G; Town Gambino Decl. Exs. B-G), as well as the criminal complaint in Plaintiff's case, (Davis Gambino Decl. Ex. A; Town Gambino Decl. Ex. A). In opposition to Davis's motion, Plaintiff also attached her own affidavit. (Doc. 29 ("Plaintiff Aff.").)

Davis attached the following exhibits to her motion to dismiss: (1) affirmation of attorney Timothy S. Carr, (Doc. 21 ("Carr Affirm.")); (2) Davis's pre-motion letter filed in this case, (*id.* Ex. A); (3) Plaintiff's response to Davis's pre-motion letter filed in this case, (*id.* Ex. B); (3) a May 5, 2015 Harassment Prevention Order issued by a Massachusetts trial court against Plaintiff at the request of Davis's daughter, (*id.* Ex. C); (4) a stipulated order from the Massachusetts trial court extending the Harassment Prevention Order against Plaintiff, (*id.* Ex.

D); and (5) a June 11, 2015 temporary order of protection issued by the Town of Bedford Town Court against Plaintiff prohibiting Plaintiff from contacting Davis and her family and from contacting another classmate of Plaintiff's daughter named Hansen and that classmate's parents, (*id.* Ex. E). The Town Defendants submitted Fumagalli's Declaration. (Fumagalli Decl.)

I disregard the factual averments contained in Fumagalli's declaration, Carr's affirmation, and Plaintiff's affidavit. Declarations and affidavits submitted in support of a motion to dismiss "are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration, not to advance factual averments or legal arguments." *Clark v. Kitt*, No. 12-CV-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014) (citation omitted), *aff'd*, 619 F. App'x 34 (2d Cir. 2015) (summary order). I consider the remainder of the documents submitted by the parties either because they are publicly availably documents, *see Missere v. Gross*, 826 F. Supp. 2d 542, 553 (S.D.N.Y. 2011), or because they are incorporated by reference in the SAC, *Weiss*, 762 F. Supp. 2d at 567. But I consider these documents for the fact of their contents, not their truth. *See Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 541, 545 n.3 (S.D.N.Y. 2011).

## III. <u>DISCUSSION</u>

### A. *Monell* <u>Liability</u>

The Town argues that Plaintiff has failed to state a *Monell* claim. (Town Ds' Mem. at 4-5.) "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Under *Monell*, to state a claim against a municipality under § 1983 based on the acts of a public official, "a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right;

(3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91). To satisfy the fifth element, a plaintiff may assert:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with the municipal employees.

*Betts v. Shearman*, No. 12-CV-3195, 2013 WL 311124, at *15 (S.D.N.Y. Jan. 24, 2013) (internal quotation marks omitted), *aff'd*, 751 F.3d 78 (2d Cir. 2014). "[M]ere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015).

Here, Plaintiff does not provide facts plausibly showing the existence of any policy, actions taken or decisions made by policymaking officials, systemic failures to train or supervise, or practices so widespread that they practically have the force of law. (*See* SAC.) In fact, Plaintiff has not alleged any nonconclusory facts about the Town at all. Plaintiff's opposition claims that the SAC "clearly shows the pattern, practice or custom employed by Defendants," (P's Town Opp. at 9), but she provides facts only about her case, which is insufficient to show a pattern, practice, policy or custom. *See, e.g.*, *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 10 (2d Cir. 2017) (summary order) (finding that Plaintiff "[did] not sufficiently allege a pattern of similar constitutional violations by the District Attorney's Office" because he "never mentions specific instances of prosecutorial misconduct beyond [his] own case"); *Fleming v. City of N.Y.*,

No. 18-CV-4866, 2019 WL 4392522, at *8 (S.D.N.Y. Aug. 27, 2019) ("Plaintiff does not explain which facts, other than her son's alleged experiences in prison, support her belief that his alleged deprivation of rights is part of the *Monell* [d]efendants' existing customs, patterns, or practices.") (internal quotation marks omitted); *cf. Barros v. Claytor*, No. 09-CV-11626, 2010 WL 2292173, at *4 (D. Mass. June 7, 2010) ("In general, without other evidence, a single incident alone cannot establish a municipal custom or policy.").

Plaintiff's other argument – that the "supervisors and policy makers," *i.e.*, Sergeant Gruppuso (a police sergeant) and Fumagalli (a town clerk), violated Plaintiff's constitutional rights and therefore Plaintiff need not plead a specific policy or custom – is also unpersuasive. (*See* P's Town Opp. at 9.)  Although it is true that "[o]fficial municipal policy includes the decisions of a government's lawmakers, [and] the acts of its policymaking officials," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), Plaintiff has not demonstrated that Sergeant Gruppuso, Fumagalli, or any Defendant exercised final policymaking authority while committing the purported actions.  Indeed, Plaintiff's allegations show that Fumagalli was not a final policymaker, given that Plaintiff successfully appealed her FOIL determination.  And a police sergeant, even if the ranking officer on a matter, is not a policymaker.  *See, e.g.*, *Clancy v. Town of Southold*, No. 15-CV-7321, 2018 WL 4185706, at *5 (E.D.N.Y. Aug. 31, 2018) (collecting cases); *Raphael v. County of Nassau*, 387 F. Supp. 2d 127, 132 (E.D.N.Y. 2005).  Plaintiff's *Monell* claims thus fail.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (plurality opinion) ("The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.  The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held

liable.") (citation and footnote omitted); *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (fact

that an employee has been "granted discretion in the performance of his [or her] duties" does not

suffice as final policymaking authority supporting municipal liability).

The claims against the Town are therefore dismissed.[7]

## B.  **Section 1983**

### 1.  **Timeliness**

Davis argues that Plaintiff's § 1983 claims against her are time-barred, and the Town

Defendants argue that Plaintiff's § 1983 claims for false arrest, false imprisonment, supervisory

liability, and failure to intervene are time-barred.  (Davis Mem. at 8-9; Town Ds' Mem. at 9-10.)

The statute of limitations for a § 1983 action arising in New York is three years.  *See Lynch v.

Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (summary order).  Under

federal law, a claim arising under § 1983 "accrues" when the plaintiff "knows or has reason to

know of the injury which is the basis of his action."  *Pearl v. City of Long Beach*, 296 F.3d 76,

80 (2d Cir. 2002); *see Pinaud v. County of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("[W]hen

a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to

run . . . .").

Because Plaintiff filed this action on November 8, 2018, any § 1983 claims based on acts

prior to November 8, 2015, are untimely.  All of the acts underlying the claims set forth above,

including Plaintiff's arrest on May 20, 2015, (SAC ¶ 16), fall outside the limitations period.

---

[7] Plaintiff's claims against the Police Department also fail because it is not a suable entity but rather a subdivision of the Town.  *See Schisler v. Utica Police Dep't*, No. 16-CV-1051, 2016 WL 11265987, at *2 (N.D.N.Y. Sept. 9, 2016) ("[A] municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located."); *see also White v. Syracuse Police Dep't*, No. 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (same and collecting cases), *report and recommendation adopted*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019).

Thus, Plaintiff's causes of action arising under § 1983 against Davis are untimely, as are Plaintiff's claims against the Town Defendants for false arrest, false imprisonment, supervisory liability, and failure to intercede.

Plaintiff does not dispute that these claims accrued more than three years before she sued but, in an effort to resuscitate her claims, invokes the doctrine of fraudulent concealment and argues that I should equitably toll the statute of limitations.  (P's Davis Opp. at 11-14; P's Town Opp. at 10-13.)  In order for equitable tolling to be available on the basis of fraudulent concealment, a plaintiff must show that (1) the defendant concealed the existence of the unlawful conduct, (2) the plaintiff remained ignorant of the violation until some point within the statute of limitations, and (3) this continuing ignorance was not the result of a lack of diligence.  *In re London Silver Fixing, Ltd. Antitrust Litig.*, 213 F. Supp. 3d 530, 572 (S.D.N.Y. 2016).  "A claim of fraudulent concealment must be pleaded with particularity, in accordance with the heightened pleading standards of Rule 9(b)."  *Id.* (internal quotation marks omitted).  "Where fraudulent concealment is established, the statute of limitations does not begin to run until the plaintiff knew, or in the exercise of reasonable diligence should have known, of the existence of his cause of action."  *Kearse v. Kaplan, Inc.*, 692 F. Supp. 2d 398, 401 (S.D.N.Y. 2010) (internal quotation marks omitted).  "The burden of demonstrating the appropriateness of equitable tolling lies with the plaintiff."  *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 529 (S.D.N.Y. 2007) (internal quotation marks and alteration omitted), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (summary order).  Equitable tolling is appropriate "only in rare and exceptional circumstances."  *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (internal quotation marks omitted).

Plaintiff has not satisfied her burden to plead fraudulent concealment as to Davis or the Town Defendants. With respect to Davis, Plaintiff's SAC generally and conclusorily claims that all Defendants concealed evidence but makes no reference to any action Davis took to do any such thing. (SAC ¶¶ 46, 80, 92.) "Allegations that generalize among multiple defendants do not suffice because the doctrine of fraudulent concealment tolls the statute of limitations only as to those defendants who committed the concealment." *Behrens v. JPMorgan Chase Bank N.A.*, No. 16-CV-5508, 2019 WL 1437019, at *6 (S.D.N.Y. Mar. 31, 2019) (internal quotation marks omitted). Plaintiff never alleges that Davis took any steps to conceal evidence in this case, and I see no other reason to toll the statute of limitations as to the claims against her. *See Griffin v. McNiff*, 744 F. Supp. 1237, 1256 n.20 (S.D.N.Y. 1990) ("[T]he doctrine of fraudulent concealment tolls the statute of limitations only as to those defendants who committed the concealment, and plaintiffs may not generally use the fraudulent concealment by one defendant as a means to toll the statute of limitations against other defendants."), *aff'd*, 996 F.2d 303 (2d Cir. 1993); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 232 (S.D.N.Y. 1989) ("Allegations that other defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment against all defendants.") (emphasis omitted). Plaintiff's § 1983 claims against Davis are dismissed as untimely.

With respect to the Town Defendants, I also decline to toll the statute of limitations.[8] First, Plaintiff failed to establish that the Town Defendants concealed evidence *of the unlawful conduct*. "Under the doctrine of equitable tolling, a complainant may be allowed to file his or

---

[8] Only Sergeant Gruppuso and Fumagalli are alleged to have done anything to conceal. (SAC ¶¶ 43-44.) Assuming that their actions could be attributable to the Town for purposes of equitable tolling, they could not be attributable to Detective Comunale. So the § 1983 claims are dismissed as to him.

her claim outside the applicable limitations period if, because of some action on the defendant's part, the complainant was *unaware that the cause of action existed*." *Long v. Frank*, 22 F.3d 54, 58 (2d Cir. 1994) (emphasis added). Plaintiff's SAC alleges that Sergeant Gruppuso and Fumagalli each falsely represented that no documents relating to Plaintiff's case existed, (SAC ¶¶ 43-44, 61), but the SAC does not plausibly allege that any alleged fraud precluded Plaintiff from discovering she was falsely arrested and imprisoned or that nobody interceded or supervised to prevent it. Plaintiff has not explained why she was unable to assert her claims when they accrued on May 20, 2015, the date of her arrest. Indeed, she knew on that date whether she was falsely arrested and detained and whether others failed to intervene in and supervise to prevent that alleged injustice. As the Town Defendants correctly argue, "Plaintiff's notice and knowledge as to these claims was wholly independent of the contents of the investigation file" Plaintiff sought. (Town Ds' Reply at 6.) Accordingly, there is no basis to toll the statute of limitations as to the Town Defendants.[9] *See Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196, 2019 WL 3066399, at *5 (S.D.N.Y. July 12, 2019) ("[T]he Second Circuit has uniformly held that equitable tolling will not be invoked unless the plaintiff was prevented in some extraordinary way from exercising his rights, and Plaintiff[ has] not alleged that Defendants acted to prevent plaintiffs from discovering their alleged claims.") (internal quotation

---

[9] Further, any toll as to Sergeant Gruppuso, were one justified, would at best last from July 10, 2017, when Sergeant Gruppuso allegedly falsely told Plaintiff that the Police Department had no records, to April 24, 2018, when the Town's attorney provided the records. That period of nine-plus months would extend the date by which Plaintiff had to sue until early March 2019. Yet Sergeant Gruppuso was not named as a Defendant until May 7, 2019. (*See* Doc. 25.) Plaintiff was hardly diligent in waiting over a year after she had reason to know that Sergeant Gruppuso may have concealed evidence. Fumagalli denied knowing of any records on March 1, 2018, and Plaintiff knew less than two months later that there were indeed records. A two-month toll as to her would extend Plaintiff's time to sue to July 20, 2018, yet Fumagalli was not sued until almost ten months later, which also is not diligent.

marks and citation omitted); *cf. Paige v. Police Dep't of Schenectady*, 121 F. Supp. 2d 723, 729

(N.D.N.Y. 2000) ("Merely having been told . . . that there was no investigatory file is insufficient

to support a claim of fraudulent concealment, given plaintiff's knowledge of all the other

facts."), *aff'd*, 264 F.3d 197 (2d Cir. 2001).[10]

### 2. Merits of Section 1983 Claims Against Davis

Even if Plaintiff's § 1983 claims against Davis were timely, they would still be dismissed

because Davis is not a state actor. (*See* Davis Mem. at 6-8.) "'Because the United States

Constitution regulates only the Government, not private parties, a litigant claiming that [her]

constitutional rights have been violated must first establish that the challenged conduct

constitutes state action.'" *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Flagg*

*v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005)). Thus, as the plain language of

§ 1983 indicates, § 1983 liability may be imposed only upon wrongdoers "who carry a badge of

authority of a State and represent it in some capacity, whether they act in accordance with their

authority or misuse it." *NCAA v. Tarkanian*, 488 U.S. 179, 191 (1988) (internal quotation marks

omitted); *see, e.g.*, *Harrison v. New York*, 95 F. Supp. 3d 293, 322 (E.D.N.Y. 2015) ("Section

1983 constrains only state conduct, not the acts of private persons or entities.") (internal

quotation marks omitted).

Although there is "no single test to identify state actions and state actors," *Cooper v. U.S.*

*Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009) (internal quotation marks omitted), courts in this

Circuit rely on three tests:

> For the purposes of [§] 1983, the actions of a nominally private entity are
> attributable to the state . . . (1) [when] the entity acts pursuant to the coercive power

---

[10] Plaintiff's claims for false arrest, false imprisonment, supervisory liability, and failure to intervene would also all fail because as discussed below, there was probable cause to arrest and prosecute Plaintiff.

of the state or is controlled by the state ("the compulsion test"); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or (3) when the entity has been delegated a public function by the state ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (internal quotation marks and alterations omitted).

Plaintiff argues that Davis was acting pursuant to her position as a Board of Appeals Zoning Officer during all times described in the SAC. (SAC ¶ 12.) Specifically, Plaintiff claims that Davis "utilized her position as a Town official" to "orchestrate Plaintiff's arrest," and to "inhibit the proper investigation of underage drinking actually occurring at [Davis's] residence." (*Id.* ¶¶ 19-20.) These allegations are conclusory and do not plausibly allege that Davis was a state actor. Plaintiff provides no facts plausibly showing how Davis used her position. Nothing Davis did employed the "coercive power" of the state, was closely "entwined" with the state, or amounted to the state delegating a "public function" to her. *Sybalski*, 546 F.3d at 257. And Plaintiff has cited no case to show that a private citizen's participation in a lawful police investigation "entwines" the private party with the Government action that ultimately results.[11] *See Harrison*, 95 F. Supp. 3d at 323 (providing information to law enforcement does not make one a state actor even if the information is false) (collecting cases). Thus, Davis was not a state actor for § 1983 purposes, and Plaintiff's § 1983 claims against Davis are dismissed for this additional reason.

---

[11] A private citizen can be liable under § 1983 if she conspires with State actors. *See, e.g.*, *Gierlinger v. Town of Brant*, No. 13-CV-370, 2015 WL 269131, at *4 (W.D.N.Y. Jan. 21, 2015) ("[A] private party defendant may be a state actor where engaged in a conspiracy with other state actors under § 1983.") (internal quotation marks omitted)). But as discussed below in note 18, there are no plausible conspiracy allegations here.

### 3. Section 1983 Claims Against Town Defendants

#### a. <u>Malicious Prosecution</u>[12]

The elements of a malicious prosecution claim under § 1983 are derived from state law. *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013). Under New York law, a plaintiff must prove, and to prevail on a motion to dismiss in federal court must plausibly allege, "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal quotation marks omitted). A plaintiff bringing a § 1983 malicious prosecution claim must also plead a post-arraignment seizure, although "the requirements of attending criminal proceedings and obeying the conditions of bail suffice on that score," *id.*, and that the "the criminal proceedings against him [or her] were terminated in a manner indicating his [or her] innocence," *Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018). "When a person has been arrested and indicted, absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily imply a lack of reasonable grounds for the prosecution." *Id.* at 28 (internal quotation marks and alteration omitted).

Assuming that Plaintiff suffered a Fourth Amendment seizure, Plaintiff cannot establish that her criminal prosecution terminated in a manner indicating innocence. Plaintiff's criminal prosecution was dismissed on speedy trial grounds. (*See* SAC Ex. 1 at 4.) District courts in this

---

[12] The malicious prosecution claim is not time-barred but malicious prosecution claims do not accrue until the underlying criminal case concludes in the Plaintiff's favor, *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019), which here was July 6, 2017, (*see* SAC ¶ 33) – well within the limitations period.

Circuit disagree on whether, following *Lanning*, a speedy trial dismissal amounts to a favorable

termination for a malicious prosecution claim under § 1983. *See Nelson v. City of N.Y.*, No. 18-

CV-4636, 2019 WL 3779420, at *12 n.4 (S.D.N.Y. Aug. 9, 2019) (describing split). But it

appears to this Court that the *Lanning* court's directive that "where a dismissal in the interest of

justice leaves the question of guilt or innocence unanswered, it cannot provide the favorable

termination required as the basis for that claim," *Lanning*, 908 F.3d at 28-29 (alterations

omitted), would similarly apply to speedy trial dismissals. From the face of Plaintiff's SAC, the

question of Plaintiff's guilt or innocence is left unanswered. There might be situations where a

case is dismissed on speedy trial grounds in a context indicating that the prosecution had

insufficient evidence to prove its case, but there is no indication that this is one of them.[13]

Plaintiff's argument that that her criminal case was dismissed because Defendants did not want

to perjure themselves is far too speculative to avoid dismissal. Plaintiff has not identified a

single witness who indicated a lack of willingness to testify, let alone refused for the reason she

suggests. Because Plaintiff has not pleaded that her criminal proceeding terminated in a manner

indicating her innocence, her § 1983 malicious prosecution claim is dismissed.

Even if Plaintiff had sufficiently pleaded a termination indicative of innocence, she has

failed to state a malicious prosecution claim because it is clear from her complaint that probable

cause existed. *See Hadid v. City of N.Y.*, 730 F. App'x 68, 71 (2d Cir. 2018) (summary order)

(affirming dismissal of malicious prosecution claim where presence of probable cause was

apparent from face of complaint).

---

[13] Even the inability to prove the charge would not necessarily be indicative of innocence. There
are myriad reasons why a prosecutor might be unable to go forward – for example, the death of a
critical witness – that would not suggest that the defendant was innocent.

Probable cause is a complete defense to a false arrest claim, and continuing probable cause is a complete defense to a malicious prosecution claim. *Betts*, 751 F.3d at 82. Probable cause to arrest exists where "the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (internal quotation marks omitted). "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest," *Shamir v. City of N.Y.*, 804 F.3d 553, 557 (2d Cir. 2015) (internal quotation marks omitted), and "the validity of an arrest does not depend upon an ultimate finding of guilt or innocence," *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 29 (E.D.N.Y. 2015) (alteration omitted). "[W]here there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court." *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007).

"The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases," *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013), and is measured from the time the prosecution commences, *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004). Probable cause to charge exists where there are "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury*, 721 F.3d at 95 (internal quotation marks omitted). "In cases where the police had probable cause to arrest," a plaintiff "must show that authorities became aware of exculpatory evidence between the time of the arrest and subsequent prosecution that would undermine the probable cause which supported the arrest." *Weiner*, 90 F. Supp. 3d at 34 (internal quotation marks omitted).

> Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact.

*Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (internal citations and quotation marks omitted), *as amended* (May 21, 1996).

Plaintiff was charged with violating New York Penal Law § 240.50(3), which provides, in pertinent part, that:

> A person is guilty of falsely reporting an incident in the third degree when, knowing the information reported, conveyed or circulated to be false or baseless, he or she:
>
> 3. Gratuitously reports to a law enforcement officer or agency (a) the alleged occurrence of an offense or incident which did not in fact occur; or (b) an allegedly impending occurrence of an offense or incident which in fact is not about to occur; or (c) false information relating to an actual offense or incident or to the alleged implication of some person therein . . . .

"Calls to 911 can qualify as 'reports to a law enforcement officer or agency.'" *Davis v. City of N.Y.*, No. 15-CV-5900, 2017 WL 1184287, at *3 (S.D.N.Y. Mar. 28, 2017) (quoting N.Y.P.L. § 240.50(3)).

The documents Plaintiff attaches to the SAC – considered only for the fact that the statements therein were said, and not for their truth – establish that the Police Officers had probable cause to conclude that Plaintiff knew she had no basis for alleging that underage drinking was occurring at Davis's house. Specifically, Detective Comunale had numerous witness statements and documents establishing that (1) Plaintiff was in a personal dispute with Davis's daughter and their classmate named Hansen, and things had gotten so out of hand that the boarding school had forbidden Plaintiff to visit and a court in the state where the school was located had issued an order of protection against Plaintiff, (SAC Ex. 5[14] at 25-26; SAC Ex. 6[15] at

---

[14] Citations to SAC Ex. 5 refer to the Court's Electronic Case Filing ("ECF") System pagination stamped at the top of each page.

[15] Citations to SAC Ex. 6 refer to the Court's ECF System pagination stamped at the top of each page.

6; Carr Affirm. Exs. C-E); (2) that on the night in question, Davis was hosting a small dinner party and there was no teenage house party or underage drinking going on, (SAC Ex. 5 at 10, 104); and (3) when Plaintiff made the 911 call, she falsely identified herself as Hansen's mother, (*id.* Ex. 5 at 100, 103, 105-109). In these circumstances, it was reasonable to believe Plaintiff had knowingly and gratuitously made a false report. *See People v. Taylor*, 913 N.Y.S.2d 308, 312 (App. Div. 2010) (Leventhal, J., dissenting); *People v. Ellis*, 908 N.Y.S.2d 687, 688 (App. Div. 2010).[16]

Accordingly, the malicious prosecution claim is dismissed.

b.      First Amendment Retaliation

Although Plaintiff's SAC does not specify what type of First Amendment claim she intends to bring, I construe the SAC to raise a claim for First Amendment retaliation. (*See* SAC ¶¶ 88-93.) For reasons that elude the Court, the Town Defendants did not specify the First Amendment retaliation claim under § 1983 as one of the § 1983 claims that is time-barred. (*See* Town Ds' Mem. at 9-10, 15-16.) But because First Amendment retaliation claims arising out of allegedly retaliatory arrests accrue on the date of the arrest, *Smith v. Campbell*, 782 F.3d 93, 99 (2d Cir. 2015) (First Amendment retaliation claim accrued when allegedly retaliatory traffic tickets were delivered to plaintiff, not after trial); *Deraffele v. City of New Rochelle*, No. 15-CV-282, 2016 WL 1274590, at *10 n.14 (S.D.N.Y. Mar. 30, 2016) (First Amendment retaliation claim accrued when allegedly retaliatory citations were issued), this claim is time-barred as the other § 1983 claims are. I may "*sua sponte* dismiss untimely claims where the defense is apparent on the face of the complaint," *Wright v. Rensselaer Cty. Jail*, 771 F. App'x 58, 59 (2d

---

[16] At the very least, not all reasonable officers would agree that there was no probable cause under these circumstances, and therefore the Police Officers would be entitled to qualified immunity. *See Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Walczyk*, 496 F.3d at 154.

Cir. 2019) (summary order); *see Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[D]istrict courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted.") (internal quotation marks omitted), as it is here, especially because Defendants raised the § 1983 statute of limitations.  The First Amendment retaliation claim is therefore dismissed, but I address the merits in an excess of caution.

In the Second Circuit, the elements of a First Amendment retaliation claim are dependent on the "factual context" of the case before the district court.  *Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008).  To allege a First Amendment claim based on a retaliatory arrest, a plaintiff must plausibly allege that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right," *Delaney v. City of Albany*, No. 18-CV-1193, 2019 WL 2537312, at *6 (N.D.N.Y. June 20, 2019) (internal quotation marks omitted), *report and recommendation adopted*, 2019 WL 3454618 (N.D.N.Y. July 31, 2019), or caused plaintiff to suffer some other concrete harm, *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (*per curiam*).

Plaintiff has a protected First Amendment interest in filing the police report, *see Estate of Morris ex rel. Morris v. Dapolito*, 297 F. Supp. 2d 680, 692 (S.D.N.Y. 2004) ("The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment.") (internal quotation marks omitted), and Defendants do not argue otherwise.  But Plaintiff's claim fails because a "plaintiff pressing a retaliatory arrest claim must plead . . . the absence of probable cause for the arrest."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724

(2019).[17]  As noted above, here not only does Plaintiff fail to plausibly allege the absence of

probable cause, but her SAC shows the existence of probable cause.  The First Amendment

claim is therefore dismissed.

                    c.       Section 1983 Conspiracy Against All Defendants

Plaintiff also alleges a § 1983 conspiracy.  (SAC ¶¶ 78-81.)  "To prove a § 1983

conspiracy, a plaintiff must show:  (1) an agreement between two or more state actors or between

a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3)

an overt act in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65,

72 (2d Cir. 1999).  "[A]bsent an underlying constitutional violation on which to base a § 1983

conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law."  *AK Tournament Play,*

*Inc. v. Town of Wallkill*, No. 09-CV-10579, 2011 WL 197216, at *3 (S.D.N.Y. Jan. 19, 2011),

*aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order).  Because the Court has already

dismissed all of her underlying § 1983 claims, Plaintiff's § 1983 claims fail as well.[18]

---

[17] The lack of probable cause must be shown in retaliatory arrest cases in part because "protected speech is often a legitimate consideration for officers when deciding whether to make an arrest." *Nieves*, 139 S. Ct. at 1724 (internal quotation marks omitted).

[18] The conspiracy claim would fail on the merits anyway.  Plaintiff's allegations in this regard are conclusory.  The SAC generally refers to the "extensive emails" between Defendants and Davis that Plaintiff claims show a "conspiracy to orchestrate the arrest and prosecution of the Plaintiff."  (SAC ¶ 40; *see id.* ¶¶ 68, 70.)  But aside from pointing to one email from Detective Comunale, (*id.* ¶ 76), Plaintiff fails to specifically allege how the "extensive emails" show a conspiracy.  Even Detective Comunale's April 30, 2015 email to Davis does not plausibly suggest the existence of a conspiracy.  In it, Detective Comunale mentions that he might want to interview Davis's guests from the night in question, (SAC Ex. 6 at 11), despite Davis's reluctance to bring her guests into the matter, (*id.* Ex. 5 at 102; *id.* Ex. 6 at 15).  Detective Comunale says such interviews would help build "a stronger case" and that he does not "like to lose in court."  (*Id.* Ex. 6 at 11.)  It is hard to fathom how a detective wanting to have strong evidence that will hold up in court before he brings a charge is at all improper, let alone evidence of a conspiracy.  Despite Plaintiff's failure to point to any other specific communications that support her claim, the Court has reviewed the emails between Detective Comunale and Davis, and they strike the Court as appropriate and ordinary contacts between a detective and a

## C. **State Law Claims**

In addition to her federal claims, Plaintiff alleges state law claims for (1) libel and slander; and (2) negligent hiring and supervision. (SAC ¶¶ 94-111.)[19] The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, and having considered the factors set forth in *Cohill*, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. *See id.* (citing 28 U.S.C. § 1367(c)(3)).[20]

---

complaining witness. Thus the "extensive emails" fail to "nudge[ Plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Morris v. N.Y. City*, No. 14-CV-1749, 2014 WL 3897585, at *2 (E.D.N.Y. Aug. 8, 2014) (inference of conspiracy not warranted where police spoke to private individuals and relied on their information in making arrest); *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012) (providing information to police, even if false, does not suggest conspiracy unless private party improperly influenced or controlled police).

[19] If Plaintiff intends her negligent hiring and supervisory claim to fall under § 1983, it fails because it is entirely conclusory. *See Cort v. Marshall's Dep't Store*, No. 14-CV-7385, 2015 WL 9582426, at *5, at *13 (E.D.N.Y. Dec. 29, 2015) ("A conclusory allegation is not enough to state a claim for negligent hiring, retention, supervision, or training."); *Cruz v. New York*, 24 F. Supp. 3d 299, 311 (W.D.N.Y. 2014) (allegations that plaintiff knew or should have known that defendant was potentially dangerous was "conclusory and unsupported by any factual allegations supporting his assertion"); *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 264 (E.D.N.Y. 2014) (allegations that employees "had the propensity to engage in illegal conduct" and that such conduct fell "outside the course and scope of their employment" failed to plausibly support "the threadbare allegation") (internal quotation marks omitted), *aff'd*, 626 F. App'x 297 (2d Cir. 2015) (summary order).

[20] Although I need not reach the issue, it appears that Plaintiff's state law claims do not comply with the Notice of Claim requirement under New York General Municipal Law. (*See* Town Ds' Mem. at 6-7.) Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1). "The notice of claim must provide, among other things, the nature of the

## IV.     LEAVE TO AMEND

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (internal quotation marks omitted).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended twice, after having the benefit of pre-motion letters from Defendants, (Docs. 10, 32), as well as the Court's observations during two pre-motion conferences, (Minute Entries dated Mar. 7, 2019 & June 19, 2019).  In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy

---

claim and must be filed within ninety days after the claim arises."  *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 248 (E.D.N.Y. 2012) (citing N.Y. Gen. Mun. Law § 50-e).  Furthermore, a plaintiff must allege the following elements:  "(1) he [or she] has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim."  *Roundtree v. City of N.Y.*, No. 15-CV-6582, 2018 WL 443751, at *6 (S.D.N.Y. Jan. 16, 2018) (citing N.Y. Gen. Mun. Law § 50-i).  "Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action for lack of subject-matter jurisdiction."  *Tulino v. City of N.Y.*, No. 15-CV-7106, 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (internal quotation marks omitted).  Plaintiff concedes that a notice of claim was not filed.  (P's Town Opp. at 2.)

district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (alteration, footnotes, and internal quotation marks omitted); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted).

Further, Plaintiff has not asked to amend or suggested that she is in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Davis's motion to dismiss is GRANTED and the Town Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 20, 42), enter judgment for Defendants, and close the case.

**SO ORDERED.**

Dated:  December 2, 2019
        White Plains, New York

_____
            CATHY SEIBEL, U.S.D.J.